Brian Tome, Esquire
**REILLY, MCDEVITT & HENRICH, P.C.**
3 Executive Campus
Suite 310
Cherry Hill, NJ  08002
Phone: 302.777.1700
Email: btome@rmh-law.com

Walter Stephen Zimolong III, Esquire
**ZIMOLONG, LLC**
P.O. Box 552
Villanova, PA 19085
Telephone: 215.665.0842
Email: wally@zimolonglaw.com

David C. Gibbs, Jr.*
Seth J. Kraus*
Jonathan D. Gibbs*
**GIBBS & ASSOCIATES LAW FIRM, LLC**
6398 Thornberry Ct.
Mason, Ohio 45040
Telephone: (513) 234-5545
Email: dgibbsjr@gibbs-lawfirm.com
       skraus@gibbs-lawfirm.com
       jgibbs@gibbs-lawfirm.com

*Admitted Pro Hac Vice*

---

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SOLID ROCK BAPTIST CHURCH,** a New Jersey not-for-profit corporation; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**PHILIP D. MURPHY,** Governor of the State of New Jersey, in his official capacity, *et al.*,<br><br>Defendants. | Civil No. 1:20-cv-6805-RMB-JS |

**PLAINTIFFS' SUPPLEMENTAL BRIEF
REGARDING *TANDON V. NEWSOM* IN SUPPORT
OF PLAINTIFFS' MOTION FOR RECONSIDERATION**

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................

    I.     New Jersey's Executive Orders and State Health Directives. ................

    II.    The *Tandon* decision's application to this case. ...................................

          A.    *Tandon* now controls analysis of First Amendment challenges to COVID restrictions. ................................................

          B.    Application of the *Tandon* points to this case. ..............................

               1.    The Executive Orders at issue treat many comparable secular activities more favorably than Plaintiffs' religious exercise. ..............................................

               2.    Many of the exempted indoor secular gatherings pose comparable risks as those posed by restricted indoor religious gatherings. ................................................

               3.    Unlike at the time of this Court's Order, the State is now required to carry a strict scrutiny burden. ...............

               4.    This case is not moot just because Defendants' restrictions on Plaintiffs' indoor free exercise activities have, for the moment, been relaxed. ....................

CONCLUSION ............................................................................................

# TABLE OF AUTHORITIES

**United States Constitution**
U.S. Const. amend. I ................................................................................*passim*

**Cases**
*Gateway City Church v. Newsom,* 592 U.S. ___ (2021) .........................................3

*High Plains Harvest Church v. Polis*,
    2020 U.S. Dist. LEXIS 142476 (D. Colo. Aug. 10, 2020)...........................4

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S. Ct. 63,
    208 L.E.-142d 206 (Nov. 25, 2020) .....................................................4, 11

*Solid Rock v. Murphy*,
    480 F.Supp.3d 585 (Dist. N.J. Aug. 20, 2020) ................ 6, 7, 8, 9, 10, 11, 12

*S. Bay United Pentecostal Church v. Newsom*,
    141 S.Ct. 716 (Feb. 5, 2021) ....................................................................... 3

*Tandon v. Newsom*, 593 U.S. ___,
    2021 U.S. LEXIS 1866 (April 9, 2021)................................................*passim*

*United States v. Ware*, No. 11-224,
    2021 U.S. Dist. LEXIS 73997 (D.N.J. Apr. 15, 2021)................................13

**Other Authorities**
N.J. Exec. Order 107 (March 21, 2020) ................................................ 1, 2, 3, 8, 9

N.J. Exec. Order 122 (April 8, 2020) .................................................................2, 3

N.J. Exec. Order 149 (May 30, 2020) ...................................................................2

N.J. Exec. Order 165 (July 13, 2020) ....................................................................2

N.J. Exec. Order 175 (Aug. 13, 2020)....................................................................3

N.J. Exec. Order 230 (March 19, 2021) ................................................................1

# SUPPLEMENTAL BRIEF IN SUPPORT
# OF MOTION FOR RECONSIDERATION

Plaintiffs hereby submit their *Supplemental Brief in Support of Motion for Reconsideration of Court's Order Dated August 20, 2020 (ECF No. 32) Based on an Intervening Change of Authority* in response to the Court's April 15, 2021, Text Order. (ECF No. 74). The Supplemental Brief is intended to explain how the U.S. Supreme Court's decision in *Tandon v. Newsom* affects this case. Plaintiffs continue to rely upon, and incorporate as if fully set out herein, their Amended Complaint (ECF No. 33), Motion and Memorandum in Support of Motion for Preliminary Injunction (ECF Nos. 12 and 12-1), and their Motion for Reconsideration (ECF No. 50), in support of their request for reconsideration of the Court's August 20, 2020, denial of their preliminary injunction motion.

## ARGUMENT

**I.   New Jersey's Executive Orders and State Health Directives.**

Since issuing Executive Order ("EO") 107, Defendant Murphy has intentionally relaxed limitations on many activities including religious gatherings. As of March 19, 2021, Executive Order ("EO") 230 permitted 50% capacity at "indoor gatherings that are religious services or celebrations, including wedding ceremonies, funerals, and memorial services that involve religious services."[1] However, this does not render Plaintiffs' claim moot as New Jersey has repeatedly,

---

[1] EO 230, ¶ 3 (March 19, 2021), https://www.nj.gov/infobank/eo/056murphy/pdf/EO-230.pdf.

1

without warning, restricted or expanded limits on gatherings. With no clear end to the limits on gatherings, the threat of future restrictions remains. While Plaintiffs' were not prosecuted under the current order, the current order's restrictions on religious liberties are no different and all COVID related executive orders restricting religious liberties are reviewable under the same standards applied in this case.

While New Jersey has unlawfully restricted protected religious observance under all the executive orders, many secular activities or businesses are still allowed to operate at greater than 50% capacity and with an unlimited minimum or maximum number of people. These include the following:

<u>100% of capacity, no numerical cap</u>:
- Schools/in-person education;[2]
- Non-retail businesses such as law firms, accounting firms, Fortune 500 companies, and more;[3]
- Manufacturers, warehouses, food processing centers, and meatpacking plants;[4]
- Media services;[5]
- Childcare centers;[6]
- Public and private carriers;[7] and
- Homeless shelters, drop-in centers, and other social service venues.[8]

---

[2] EO 175 (Aug. 13, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-175.pdf.
[3] EO 107, ¶ 11 (March 21, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf.
[4] *Id.*; *see also* EO 122, ¶ 4 (April 8, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-122.pdf.
[5] EO 107, ¶ 19.
[6] EO 149, ¶ 6 (May 30, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-149.pdf.
[7] EO 165 (July 13, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-165.pdf.
[8] EO 107, ¶ 11.

> 50% capacity, no numerical cap:
> - "Essential retail," such as grocery stores, hardware and home improvement stores, liquor stores, Walmart, Target, Costco, etc.[9]

These businesses and activities have been favored by restrictions less severe than religious services in houses of worship, and have been spared the "kiss of death" designation as "gatherings" because they are permitted to operate at 100 percent capacity with no numerical cap.

## II. The *Tandon* decision's application to this case.

The Supreme Court, in *Tandon v. Newsom*[10] instructed courts to use strict scrutiny when reviewing COVID restrictions on religious exercise. In its decision, the Court referenced its five recent directives to state executives warning them that they must successfully bear the heavy burden of strict judicial review before they may treat religious exercise more harshly than comparable secular activities..

Although *Tandon* was concerned specifically with a California executive order limiting at-home religious exercise to members of no more than three separate households, its reference to prior decisions makes it clear that the Court has ceased deferring to such executive restrictions. This is regardless of the character of the restrictions (e.g. prohibits all indoor-religious gatherings,[11]

---

[9] *Id.* at ¶ 6; *see also* EO 122 at ¶ 1.
[10] *Tandon v. Newsom*, 593 U.S. ___, 2021 U.S. LEXIS 1866 (April 9, 2021).
[11] *S. Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (Feb. 5, 2021); *Gateway City Church v. Newsom,* 592 U.S., at ___ (2021)

imposes a limitation on the number of households per worship activity,[12] set a minimum and/or maximum numerical cap per activity,[13] or limit the activity to occupancy percentages of a room or building).[14]

Whatever form an executive limitation on religious exercise takes, to survive a First Amendment challenge the executive must now prove he has no less restrictive method for protecting religious exercise from pandemic risk. The Court will no longer countenance the bare minimum rational basis review of executive orders restricting religious exercise in the name of the government's compelling interest in pandemic protection.

### A. *Tandon* now controls analysis of First Amendment challenges to COVID restrictions.

The Supreme Court, in *Tandon,* directed lower courts to analyze a state's COVID restrictions on religious exercise more severely than restrictions on comparable secular activities. The Court bluntly declared: "The Ninth Circuit's failure to grant an injunction pending appeal was erroneous." *Tandon, supra,* at *1. The Court took a firm position that it should not need to re-instruct lower courts, particularly the Ninth Circuit, on the review COVID restrictions on religious exercise, no matter what form the restrictions take stating "[t]his is the fifth time

---

[12] *Tandon v. Newsom*, 2021 U.S. LEXIS 1866, * 3, __ S.Ct. __, 2021 WL 1328507 (April 9, 2021) (*per curiam*).

[13] *High Plains Harvest Church v. Polis*, 2020 U.S. Dist. LEXIS 142476, * 4 (D. Colo. Aug. 10, 2020); *Roman Catholic Diocese v. Cuomo*, 592 U.S. __, 141 S.Ct. 63, 65, 208 L. Ed. 2d 206, 207, 2020 U.S. LEXIS 5708, *1 (2020) (*per curiam*).

[14] *High Plains Harvest Church, supra,* at * 4.

4

the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise." *Id.* at *4.

Spelling out its expectations for even the most reluctant court, the Justices reemphasized that "[t]his Court's decisions have made the following points clear." Then, in hornbook language, the Court set out its four points. "First, government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." "Second . . . [c]omparability is concerned with the risks various activities pose [*e.g.,* the compelling interest], not the reasons why people gather." "Third, . . . . [w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." "Fourth, even if the government withdraws or modifies a COVID restriction . . . that does not necessarily moot the case." *Id.* at 1-2.

The *per curiam* decision then applied each of those points to California Governor Newsom's COVID restriction limiting gatherings of "people from different households in a single space or place." *Tandon v. Newsom,* No. 21-15228, 2021 U.S. App. LEXIS 9255, at *2-3 (9th Cir. Mar. 30, 2021) (internal quotes omitted). Concluding that its four principles should have dictated the outcome at

5

the Ninth Circuit, the Court reiterated: first, California treats some secular activities more favorably than comparable at-home religious activities; second, the Ninth Circuit did not determine that those secular activities "pose a lesser risk of transmission than *applicant's* proposed religious exercise at home"; third, the Ninth Circuit did not require the State "to explain why it could not safely permit at-home worshipers to gather in larger numbers while using precautions used in secular activities"; and fourth, the case was not moot even though the State's restrictions were modified during litigation. *Tandon, supra,* at *3.

### B.  Application of the *Tandon* points to this case.

At the time this Court ruled on Plaintiffs' motion for preliminary injunction, it considered itself to be compelled, by older Supreme Court COVID rulings, to perform a rational basis analysis of Defendant's executive orders as they impacted Plaintiffs' religious exercise. The Supreme Court's *Tandon* decision, as well as the five others to which it cites, is a seismic shift in the required analysis of such executive orders. *Tandon* provides a clear signal to this Court that it is no longer "constitutionally bound" (*Solid Rock Baptist Church v. Murphy,* 480 F.Supp.3d 585, 596 (Dist. N.J. Aug. 20, 2020)) by Supreme Court precedent to review Defendant Murphy's Executive Orders under the less onerous "rational basis" review. Because the Orders at issue treat religious exercise less favorably than secular activities carrying the same risk of infection, they must undergo this

6

Court's strict scrutiny.

> 1. **The Executive Orders at issue treat many comparable secular activities more favorably than Plaintiffs' religious exercise.**

As this Court's opinion found, Plaintiffs argued "that the Governor's capacity restrictions on indoor gatherings are not neutral or generally applicable because they impermissibly favor secular indoor retail establishments and public places, such as airports and train stations, which are not subject to the same limitations for indoor gatherings, as for religious worship." *Solid Rock, supra,* at 594. This Court agreed, finding as fact, that the Governor's initial COVID executive orders limited all gatherings to 50 or fewer people, but that the orders excepted from their application "normal operations at airports, bus and train stations, medical facilities, office environments, factories, assemblages for the purpose of industrial or manufacturing work, construction sites, mass transit, or the purchase of groceries or consumer goods." *Id.* at 588.

The Defendants' Orders are not neutral in their application of COVID restrictions to indoor religious assemblies as opposed to secular gatherings for transportation, medical care, commercial shopping, or manufacturing. Therefore, under *Tandon's* first guideline, since the Governor's Executive Orders treat some comparable secular activity more favorably than Plaintiffs' religious exercise, the Orders have triggered this Court's strict scrutiny.

> 2. **Many of the exempted indoor secular gatherings pose comparable risks as those posed by restricted indoor religious gatherings.**

Plaintiffs agreed during oral argument that places of worship are treated more favorably than some secular indoor activities, but they also argued that many secular indoor activities are treated more favorably. Plaintiffs continue to "dispute that those types of business are more appropriate comparisons than regular retail businesses, airports, or train stations." *Id.* at 595. This Court found that under EO 107, "essential retail businesses could remain open, but were required to 'abide by social distancing practices to extent practicable while providing essential services' . . . . and to 'make all reasonable efforts to keep customers six feet apart and frequent use of sanitizing products on common surfaces.'" *Id.* at 588-89.

The Court reviewed Plaintiffs' objections to the State's more favorable treatment of secular indoor establishments, such as "retail establishments and public places, such as airports and train stations." The State countered Plaintiffs' objections with what it perceived to be the differences in risks between the favored "transitory" secular indoor conduct and Plaintiffs' disfavored religious exercise "where attendees sing, chant, and sit near each other for an extended period of time." *Id.* at 595 and n. 9.

This Court also related the Governor's uneven treatment between the massive social/political outdoor protests during the Spring of 2020, clearly

8

violative of EO 107, and other outdoor gatherings that were limited, at the time, to 25 people. The uneven treatment continued when Defendant Attorney General Grewal instructed prosecutors to dismiss Executive Order violations for protestors, but permitted the continued prosecutions of Plaintiffs for their indoor gatherings, "even if the citations were issued during the period of time when the Executive Orders did not distinguish between the risks associated with indoor and outdoor activity." *Id.* at 591.

Clearly, some of the differences in the treatment of secular gatherings and gatherings for religious exercise were not based on science, logic, or perceived risks, but "came down to a matter of what [the Governor] personally deemed more urgent and important." *Id.* at 590. The current executive order limiting religious gatherings, reinforces the State's lack of logic, science, or degree of risk in its arbitrary treatment of indoor religious services.

Even assuming *arguendo* that the State could prove the risk difference between its favored secular indoor gatherings and Plaintiffs' disfavored indoor religious gatherings, which it cannot, under *Tandon,* the State's burden under strict scrutiny has not ended.

        3.    **Unlike at the time of this Court's Order, the State is now required to carry a strict scrutiny burden.**

Once the State has asserted its compelling interest as justification for its unequal treatment of favored indoor activities as opposed to Plaintiffs' less favored

9

First Amendment activities, its burden under the strict scrutiny analysis does not end. *Tandon* requires the State do more than merely establish the difference in risk factors between secular and religious activities.

> Instead, narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

*Tandon*, *supra,* at *2. Although rational basis review did not require the State in this case to meet the "narrow tailoring" requirement of strict scrutiny analysis, as required by *Tandon*, this Court nevertheless recognized the State's failure to accommodate the Plaintiffs' First Amendment exercise by not attempting to tailor its limitations.

Despite recognizing the "legitimate government objective" of reducing COVID-19 transmission, the Court expressed skepticism of the State's asserted interests in uneven, and even "gerrymandered,"[15] limitations on different activities. The Court was puzzled as to why the State's contact tracing of 250 people, who made and used reservations to attend Solid Rock's worship services, would be more difficult than contact tracing a similar number of people gathering in a casino.

---

[15] *Solid Rock supra,* at 597 n. 11.

10

> [A]t a minimum, the State's failure to undertake a more thoughtfully tailored approach to indoor religious activity, while pursuing nuanced and creative approaches to accommodate casinos, retail stores, transportation hubs, and schools, tends to suggest that accommodating religious activity was simply not a priority for the State.

*Solid Rock,* 597. The Court clearly recognized the State's failure to tailor the limits it placed upon treasured First Amendment religious freedom rights.

Additionally, the Court specifically recognized the efforts made by Plaintiffs to ameliorate the risks of COVID-transmission at their indoor gatherings. The Court considered Plaintiffs efforts, "such as limiting attendance, setting up a reservation system, taking temperature of attendees, implementing socials distancing, requiring mask usage, and sanitizing the sanctuary before and after services" to be "precisely the type of precautions that could have been considered and implemented by the State if it chose to prioritize indoor worship services to the same extent that it prioritized outdoor non-religious protests." Plaintiffs demonstrated they could protect against COVID transmission by implementing the less restrictive measures the State permitted comparable activities to use, exempting them from the State's restrictions.

This Court appeared to foresee the Supreme Court's decisions, beginning with the November 2020 *Roman Catholic Diocese* decision and continuing through the April 2021 *Tandon* decision, when it observed that the State had not exercised its duty to narrowly tailor its restrictions upon religious exercise. "Given the sacred

11

status of Free Exercise rights under the First Amendment, the State could have developed more narrowly tailored precautions to mitigate risk of transmission while allowing Plaintiffs to gather for prayer services in accord with their religious beliefs." *Id.* at 598. The State is now required by *Tandon* to make that narrow tailoring effort. The Court obviously determined that the State made no such effort.

Though clearly reluctant to limit itself to rational basis review, the Court submitted to the then current Supreme Court case law, deferred to the State's public health and safety regulations, held the regulations to be neutral and generally applicable, applied rational basis review to those regulations, and denied Plaintiffs' preliminary injunction for failure to demonstrate a likelihood of success on the merits. The *Tandon* decision now strongly supports Plaintiffs' contention that Defendants' regulations are not neutral or generally applicable. It also confirms this Court's apparent desire to require the State to make protection of Plaintiffs' Free Exercise rights a priority and to more narrowly tailor its regulation of their indoor gatherings for religious exercise.

    4.    **This case is not moot just because Defendants' restrictions on Plaintiffs' indoor free exercise activities have, for the moment, been relaxed.**

Defendants have already argued that this case is moot because the restrictions upon Plaintiffs' indoor free exercise activities have been modified. As in *Tandon,* Defendants, "with a track record of 'moving the goalposts' retain

authority to reinstate those heightened restrictions at any time." Therefore, this case remains active and the Court may grant effective relief. Plaintiffs also incorporate Argument I of Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint as if fully set out herein.

## CONCLUSION

The *Tandon* decision, as well as each of the other five Supreme Court decisions cited therein, granted injunctive relief to the plaintiffs, either vacating or reversing lower court denials and remanding for further consideration under the Court's strict scrutiny analysis or granting emergency injunctive relief pending appeal. This intervening Supreme Court case law is controlling of the issues the Court ruled on in its August 2020 denial of the preliminary injunction and directly affects the outcome of Plaintiffs' preliminary injunction motion. Since the District of New Jersey procedurally permits motions for reconsideration pursuant to Local Civil Rule 7.1(i), and substantively recognizes a reconsideration motion for "an intervening change in the controlling law" (*United States v. Ware*, No. 11-224, 2021 U.S. Dist. LEXIS 73997, at *1-2 (D.N.J. Apr. 15, 2021)), Plaintiffs renew their reconsideration motion (ECF No. 74) in light of *Tandon* and the case law argued in their original motion.

Based on the foregoing, Plaintiffs respectfully request this Court to reconsider its August 20, 2020, decision denying Plaintiffs' request for a

13

preliminary injunction and, upon reconsideration, grant the request injunctive relief.

Dated: May 3, 2021

Respectfully submitted,

BIBLE BAPTIST CHURCH
SOLID ROCK BAPTIST CHURCH
PASTOR ANDREW REESE
PASTOR CHARLES CLARK, JR.
PASTOR CHARLES CLARK III

By their attorneys,

**REILLY, MCDEVITT & HENRICH, P.C.**

By: s/ Brian Tome
Brian Tome
3 Executive Campus
Suite 310
Cherry Hill, NJ  08002
Phone: 302.777.1700
Email: btome@rmh-law.com


**ZIMOLONG, LLC**

By: s/ Walter Stephen Zimolong
Walter Stephen Zimolong
P.O. Box 552
Villanova, PA 19085
Telephone: 215.665.0842
Email: wally@zimolonglaw.com

and

14

                                **GIBBS & ASSOCIATES LAW FIRM, LLC**

                                By: <u>s/ David C. Gibbs, Jr.</u>
                                     David C. Gibbs, Jr.*
                                     Seth J. Kraus*
                                     Jonathan D. Gibbs*
                                     GIBBS & ASSOCIATES LAW FIRM, LLC
                                     6398 Thornberry Ct.
                                     Mason, Ohio 45040
                                     Telephone: (513) 234-5545
                                     Email: dgibbsjr@gibbs-lawfirm.com
                                                  skraus@gibbs-lawfirm.com
*Admitted Pro Hac Vice*                             jgibbs@gibbs-lawfirm.com

                                *Counsel for Plaintiffs*