[Dkt. Nos. 50, 55, 57, 58, 59]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SOLID ROCK BAPTIST CHURCH; BIBLE BAPTIST CHURCH OF CLEMENTON; ANDREW REESE; CHARLES CLARK, JR.; and CHARLES CLARK III, <br><br> Plaintiffs, <br><br> v. <br><br> PHILIP D. MURPHY, Governor of the State of New Jersey; GURBIR S. GREWAL, Attorney General of the State of New Jersey; PATRICK J. CALLAHAN, Superintendent of State Police and State Director of Emergency Management; JILL S. MAYER, Camden County Prosecutor for Clementon Borough; THOMAS J. WEAVER, Mayor of Clementon Borough; CHARLES GROVER, Chief of Clementon Borough Police Department; RICK MILLER, Mayor of Berlin Borough; MILLARD WILKSON, Chief of Berlin Borough Police Department; RICHARD A. DE MICHELE, Prosecutor for Berlin Borough; CHERYL R. HENDLER COHEN, Prosecutor for Clementon Borough, <br><br> Defendants. | Civ. No. 20-6805 (RMB/MJS) <br><br> **OPINION** |

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiffs Solid Rock Baptist Church of West Berlin, New Jersey, and Bible Baptist Church of Clementon, New Jersey, along with their respective pastors, move for reconsideration of this Court's Order [Dkt. No. 32] denying their Emergency Motion for a Preliminary Injunction. [Dkt. No. 12]. Additionally, Defendants move to dismiss the Amended Complaint [Dkt. No. 33], arguing that the claims are moot and that the Court should abstain from addressing Plaintiffs' ongoing prosecution in state court. [Dkt. Nos. 55,

57, 58, 59]. As the legal principles for these pending motions are both identical and dispositive, the Court will address these matters in one opinion. For the reasons set forth below, Plaintiffs' Motion for Reconsideration will be **DENIED** and Defendants' Motions to Dismiss will be **GRANTED.**

I. <u>Factual Background and Procedural History</u>

    a. <u>Initial Complaint</u>

Plaintiffs Solid Rock Baptist Church of West Berlin ("Solid Rock"), Bible Baptist Church of Clementon ("Bible Baptist"), Solid Rock Pastors, Charles Clark, Jr. and Charles Clark III, and Bible Baptist Pastor, Andrew Reese, initiated this matter by filing a complaint on June 3, 2020 [Dkt. No. 1] in this Court. Their complaint was filed to challenge restrictions imposed by New Jersey Governor Philip D. Murphy in response to the worldwide COVID-19 pandemic, and named Governor Murphy, New Jersey Attorney General Gurbir S. Grewal, and New Jersey Superintendent of State Police and State Director of Emergency Management Colonel Patrick J. Callahan (collectively, the "State" or "Defendants") as Defendants.

Specifically, Plaintiffs challenged Executive Order ("EO") No. 107, issued by Governor Murphy on March 21, 2020. Governor Murphy's EO 107 was further clarified by Administrative Order ("AO") No. 2020-4, issued by Colonel Callahan on March 21, 2020, which Plaintiffs also challenge. These orders, issued and enacted at the very beginning of the COVID-19 pandemic, prohibited individuals from gathering indoors for religious worship with more than ten (10) people at a time, regardless of attempted social distancing or hygiene protocols by the individuals. Amended Complaint at ¶ 2. Plaintiffs allege that EO 107 "disparately and discriminatorily allows so-called "essential" commercial and other

secular entities" to hold gatherings consisting of more than ten people without limitations or scrutiny. *Id.* Importantly, EO 107 has not been in effect since June 9, 2020, when the Order was superseded in its entirety by EO 152, which relaxed gatherings limits and allowed for outdoor religious services in unlimited numbers. Motion to Dismiss at page 1, 4. Two weeks after filing the initial Complaint, Plaintiffs filed an Emergency Motion for Preliminary Injunction in this Court on June 17, 2020, seeking "preliminary and permanent injunctive relief to be able to safely assemble for religious worship in their God-given buildings." Motion for Preliminary Injunction at page 2. Defendants Murphy, Grewal, and Callahan filed opposition on July 6, 2020, and the Court held oral arguments via Zoom on July 28, 2020. [Dkt. No. 24]. Following oral arguments, the Court issued an Order and Opinion on August 20, 2020, denying Plaintiffs' Emergency Motion for Preliminary Injunction without prejudice. [Dkt. No. 31, 32]. In its ruling, the Court allowed Plaintiffs to "amend their complaint if so desired." Opinion at page 3. One month after this Court issued its Order and Opinion, Plaintiffs filed an Amended Complaint on September 21, 2020. [Dkt. No. 33].

### b. Amended Complaint and Motion for Reconsideration

Plaintiffs' Amended Complaint added both defendants and claims to the litigation. In addition to the previously named Defendants Governor Murphy, Attorney General Grewal, and Colonel Callahan, Plaintiffs added Acting Camden County Prosecutor for Clementon Borough, Jill Mayer; Mayor of Clementon Borough, Thomas J. Weaver; Chief of Clementon Borough Police, Charles Grover; Mayor of Berlin Borough, Rick Miller; Chief of Berlin Borough Police, Millard Wilkson; Prosecutor for Berlin Borough, Richard A. De Michele; and Clementon Borough Prosecutor, Cheryl R. Hendler Cohen as

3

defendants.  Plaintiffs further allege that Defendants' orders and actions violated their rights to equal protection under the United States Constitution and the New Jersey State Constitution, in addition to the alleged violations of free exercise, establishment of religion, right to assemble, and the New Jersey State Constitution as argued in the initial Complaint.  Plaintiffs' Amended Complaint reiterates their claims against Defendants for both the initial enactment of the challenged Executive and Administrative Orders, as well as the enforcement and subsequent state prosecution of these orders by the collective Defendants against Plaintiffs Solid Rock and Bible Baptist churches and their respective pastors.

Approximately three months after filing their Amended Complaint, and nearly eight months after this Court denied Plaintiffs' Emergency Motion for Preliminary Injunction, Plaintiffs filed a Motion for Reconsideration on December 18, 2020.  [Dkt. No. 50].  In this motion, Plaintiffs requested that the Court reconsider its denial of Plaintiffs' Emergency Motion and cited a change in controlling case law in support of their argument.  Citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. _____, 2020 WL 6948354 (Nov. 25, 2020) and *Robinson v. Murphy*, 592 U.S. \_\_\_\_\_ (Dec. 15, 2020), Plaintiffs allege that these decisions from the Supreme Court of the United States dictate a ruling in their favor.  Specifically, Plaintiffs allege that these cases illustrate instances where the Supreme Court granted injunctive relief to religious institutions against restrictive government orders dictating COVID-19 occupancy protocols.  Following the filing of Defendants' Motions to Dismiss, Plaintiffs responded in opposition on February 2 and February 16, 2021.  [Dkt. Nos. 61, 62, 67, 68].  Defendants filed a reply brief on February 23, 2021, and Plaintiffs filed a letter on April 14, 2021, advising this Court that the Supreme Court recently issued an opinion in *Tandon v. Newsom*, 593 U.S. \_\_\_\_\_ (2021).  The Court requested supplemental

briefing from the parties addressing whether the *Tandon* decision affects the present case, if at all. Defendants argued in their supplemental briefing that the instant matter is unaffected by the *Tandon* decision, as the California case involved state emergency orders that were currently still in effect, as opposed to New Jersey EO 107 that was rescinded more than a year ago. [Dkt. No. 76]. Plaintiffs argue otherwise, claiming that *Tandon* not only mandates a strict scrutiny analysis of government restrictions involving religious matters by lower courts, but also alleging that the matter is not moot as New Jersey "has repeatedly, without warning, restricted or expanded limits on gatherings." Supplemental Brief, ¶ 1.

### c. Solid Rock

As discussed in this Court's August 20, 2020, Opinion, Plaintiff Solid Rock Baptist Church of West Berlin ("Solid Rock") has been operating since 1981 in Berlin, New Jersey, and its constituents gather regularly for in-person religious services. Amended Complaint at ¶¶ 56-60. The church sanctuary can seat up to 1,000 people, and the church is co-pastored by Plaintiff Charles Clark, Jr. and his son, Plaintiff Charles Clark, III. *Id.* ¶¶ 58, 59, 63. In the Amended Complaint, Plaintiffs trumpet the "ecclesiastical importance" of church attendance, and their belief that "physical assembly in one place on the Lord's day, for mid-week services, revivals, and other special religious worship meetings is an essential part of their worship and that failure to assemble is a sin in violation of God's commands as they interpret the Holy Bible." *Id.* ¶¶ 60-61. Despite their strong belief in the necessity of in-person religious services, Solid Rock complied with Governor Murphy's orders from March 23, 2020, until May 24, 2020, and did not hold any indoor worship services, instead offering livestreamed services online. *Id.* ¶ 64.

Pastor Clark notified Governor Murphy by letter on May 15, 2020, that Solid Rock intended to resume indoor worship services on May 24, 2020, and that his constituents "will be safe, sanitized, and use social distancing." *Id.* ¶ 65-66. Pastor Clark also requested that the Governor declare churches to be "essential" businesses. *Id.* Three days later, on May 18, 2020, counsel for Solid Rock wrote to Governor Murphy's office to express their constitutional concerns regarding the restrictions imposed by EO 107 and to inform the Governor that the church intended to resume indoor services on May 24, 2020. *Id.* ¶ 66. Though the Governor's office did not respond to either letter, Plaintiffs allege that Camden County public safety officers unlawfully installed cameras outside the church on May 23, 2020. *Id.* ¶ 68.

Solid Rock held two religious worship services indoors with more than ten people in the sanctuary on Sunday, May 24, 2020. Amend. Compl. ¶ 67. Although the church normally accommodates up to 1,000 people, Plaintiffs permitted no more than 250 people in the sanctuary to comply with social distancing requirements. *Id.* Attendees had their temperature checked with touchless thermometers and those constituents with a temperature above 100.4° were not permitted to enter the church. *Id.* Reservations were required to attend the services, and individuals and their families sat at least 6-feet apart and wore masks. *Id.*

The very next day, on May 25, 2020, Lt. Michael Scheer of the Berlin Borough Police Department issued criminal complaints to both Pastor Clark, Jr. and Pastor Clark, III, charging them with "opening Solid Rock Church [sic.] on 5/24/20 @ 10 am [and 5:30pm] facilitating a gathering over 10 people in violation of EO 107. *Id.* ¶ 69. Additionally, Plaintiffs allege that Defendant Jill S. Mayer, in her role as Acting Camden

County Prosecutor, instructed Defendants Miller, Wilkinson, and de Michelle not to entertain plea negotiations with Pastors Clark, Jr., and Clark III regarding the prosecution of said complaints in Clementon Municipal Court. *Id.* ¶ 71. These charges are still pending, and Solid Rock, Pastor Clark, Jr., and Pastor Clark, III contend that Governor Murphy's Order prohibits "Solid Rock members to continue to assemble as commanded by the Lord in His Word, the *Holy Bible*." *Id.* ¶ 72.

      **d.** **Bible Baptist**

Since 1886, Plaintiff Bible Baptist has been in operation in Clementon, New Jersey, offering in-person religious services to its constituents on a regular basis multiple times per week. Amend. Compl. ¶¶ 38-39. Since 2014, the congregation is pastored by Plaintiff Andrew Reese and normally holds services for seventy (70) people at its weekly assemblies. ¶¶ 40, 44. Like fellow plaintiff Solid Rock, Bible Baptist strongly believes in the importance of in-person religious services, and their Amended Complaint states that "Christian fellowship is an essential part of their worship and that failure to assemble is a sin in violation of God's commands as they interpret the *Holy Bible*." *Id.* ¶ 41. Despite this belief, from March 23, 2020, until May 20, 2020, Bible Baptist offered livestreamed services online, instead of traditional indoor church services. *Id.* ¶ 45. On May 20, 2020, however, while EO No. 107 was still in effect, the church held its mid-week worship service in its building with more than ten people—all wearing masks— in the sanctuary. *Id.* ¶ 46. Following this service, Clementon Police Chief Charles Grover issued a criminal complaint to Pastor Reese, charging him with "opening Bible Baptist Church on May 20, 2020, and facilitating a gathering of more than 10 people on the premises of the Church in violation of Executive Order 107 in violation of APP. A:9-50." *Id.* ¶ 48.

Plaintiffs allege that they fully sanitized the sanctuary before holding two religious worship services with more than 10 people in the sanctuary on Sunday, May 24, 2020. *Id.* ¶ 49. Parishioners sanitized the sanctuary between the services and all individuals in attendance, other than families, sat at least 6-feet apart and wore a mask. *Id.* It was at these services that, Plaintiffs allege, Clementon police officers arrived at the church prior to each of the two services. *Id.* ¶ 50. Though the police officers did not disrupt either service, Chief Grover once again swore out a criminal complaint charging Pastor Reese with violating EO No. 107. *Id.* As similarly alleged by Solid Rock, Bible Baptist claims that Defendant Meyer instructed other prosecutors and law enforcement officials not to entertain plea negotiations with Pastor Reese or Bible Baptist regarding the prosecution of said complaints in Clementon Municipal Court. *Id.* ¶ 51. Pastor Reese and Bible Baptist advise that they will continue "to assemble as commanded by the Lord," and are concerned about the payment of fines and possible imprisonment regarding their continued state of worship. *Id.* ¶ 54.

**II.   Standard of Review**

    **a. Motion for Reconsideration**

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. *Bowers v. Nat'l. Collegiate Athletics Ass'n.*, 130 F.Supp.2d 610, 612 (D.N.J.2001). Local Rule 7.1(i) creates a procedure by which a court may reconsider its decision "upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." *Agostino v. Quest Diagnostics Inc.*, Civ. No. 04–4362, 2010 WL 5392688 at *5 (D.N.J. Dec. 22, 2010) (*citing Bryan v. Shah*, 351 F.Supp.2d 295, 297 (D.N.J.2005); *Bowers*, 130 F.Supp.2d at 612). The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly

discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (internal citation omitted). Reconsideration is to be granted only sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J.1994). Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F.Supp. 513, 515–16 (D.N.J.1996) (internal citation omitted). Third Circuit jurisprudence dictates that a Rule 7.1(i) motion may be granted only if: (1) there has been an intervening change in the controlling law; (2) evidence not available when the Court issued the subject order has become available; or (3) it is necessary to correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)); *Agostino*, 2010 WL 5392688 at *5.

### b. Mootness

A case traditionally becomes moot when a dispute no longer presents a live case or controversy, or the parties lack a cognizable interest in the outcome of the matter. *See County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001); *Prysock v. U.S. Parole Comm'n*, No. 08-5116 (JBS), 2010 U.S. Dist. LEXIS 44286, at *6 (D.N.J. May 6, 2010). Important to note, a defendant's voluntarily cessation of the alleged wrongful behavior "does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . ..'" *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).). "[T]he central question of all mootness problems is whether changes in circumstances that

prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. N.J.*, 772 F.2d 35, 39 (3d Cir. 1985).

### III. Discussion

#### a. Plaintiffs' claims are moot

Plaintiff's Amended Complaint argues that EO 107 and its enforcement prevents parishioners from attending constitutionally protected religious services and subjects Plaintiffs to ongoing penalties via the State's prosecution. Additionally, Plaintiffs raise a claim of selective enforcement, alleging that EO 107 subjected Plaintiffs to "unequal treatment relative to similarly situated non-religious groups and individuals who also exercised First Amendment rights guaranteed under The United States Constitution." Amend. Compl. ¶¶ 98-99. Plaintiffs claim that Defendants' malfeasance is ongoing, and that their actions "have infringed upon and continue to infringe upon" Plaintiffs' constitutional rights. *Id.*

Defendants argue, in their multiple motions to dismiss, that Plaintiffs claims are moot, as "EO 152 expressly superseded that rule [EO 107] in favor of more relaxed gatherings limits." Motion at page 4. They also argue that EO 153, enacted on June 9, 2020, fully rescinded the general stay-at-home order issued by the State at the onset of the pandemic. *Id.* Defendants argue, as Plaintiffs' claims are allegedly moot, that the Court should deny Plaintiffs' Motion for Reconsideration, and dismiss the Amended Complaint. Furthermore, Defendants argue that the District Court should abstain from adjudicating Plaintiffs' claims regarding pending state prosecutions for their alleged violations of EO 107, as "[t]he request to have this court interfere with those proceedings must be denied, because

black letter rules of abstention require the issues to be litigated in state court instead." *Id.* at page 18.

In opposition, Plaintiffs propose that their claims should go forward and not be dismissed as moot, as Defendants have allegedly failed to show that the State's purportedly wrongly action will not reoccur. [Dkt. No. 67 at page 7]. "Recent federal courts reviewing the fluid ebb and tide of COVID-19 executive orders across the nation have had no difficulty in deciding that, although the order may come and go, they may also come again," Plaintiffs argue. *Id.* at page 9. Plaintiffs seek both declaratory and injunctive relief in their Amended Complaint, enjoining Defendants from enforcing the challenged Orders and declaring that the Orders are, on their face and as applied, unconstitutional. Amend. Compl. ¶ 103.

First, it is true that the contested EO 107 was rescinded by several of Governor Murphy's additional orders. *See* Motion to Dismiss, page 5. "[S]ince June 9 [2020] the State has continually declined to impose any new gatherings cap on outdoor religious services—allowing them to proceed in unlimited numbers." Thus, there can be no dispute that the alleged unlawful conduct—EO 107— has been terminated by Defendants. *See Behar v. Murphy*, No. 20-5206, 2020 WL 6375707 (D.N.J. Oct. 30, 2020), citing *Black United Fund of N.J., Inc. v. Kean,* 763 F.2d 156, 160 (3d Cir. 1985) ("[t]he raison d'etre for the injunction no longer exists.")

Second, the Court is unconvinced by Plaintiffs' argument that the State's allegedly unlawful conduct could occur again. "This criterion has been interpreted to require more than speculation that a challenged activity will be resumed." *Thompson v. United States Dep't of Labor*, 813 F.2d 48, 51 (3d Cir. 1987) (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)).

In response to the ongoing COVID-19 pandemic, Governor Murphy has issued numerous executive orders addressing occupancy limits and restrictions. While these orders certainly have changed over the course of the pandemic, they reflect the shifting nature of the coronavirus and its effect on society, as opposed to having been enacted in response to Plaintiffs' ongoing litigation. Plaintiffs present no evidence to suggest that the State will again enact measures restricting religious worship but worry about the possibility of the State's future response. Plaintiffs' concerns are worthy of consideration. As the Honorable Judge Kent A. Jordan recently noted in a similar case, "[t]he Plaintiffs insist that this case is not moot because the orders at issue are indeed capable of repetition yet evading review, but we have only their speculation that the same kind of heavily restrictive orders will be issued once more. Given the recent, wide-spread reporting that the Delta variant of the COVID-19 virus is causing increased concern among many public health authorities, the Plaintiffs' position ought not be rejected out of hand, and it has not been." *Butler County v. Governor of Pennsylvania*, No. 20-2936, at *1 (Jordan, J., concurring) (3rd Cir. August 11, 2021). This Court also appreciates Plaintiffs' position in the instant matter, but nevertheless finds that the harm Plaintiffs claim in not being able to serve their congregation has been ameliorated by the recission of EO 107. Moreover, given the precedent set by recent Supreme Court decisions on pandemic-related restrictions, the "law no longer provides [the State] a mechanism" to "repeat the alleged harm." *Rendell v. Rumsfeld*, 484 F.3d 236, 242 (3d Cir. 2007). Thus, if the State enacts new restrictions in response to COVID-19 that Plaintiffs believe are violative of their rights, Plaintiffs are not without recourse. New claims could always be filed, and the Court will hear those claims, if appropriate, in due course.

Accordingly, the Court finds that Plaintiffs' claims are moot, and will therefore deny the Motion for Reconsideration and grant the Motions to Dismiss.

### b. The Court will abstain under *Younger*

Plaintiffs also argue that this Court need not abstain from hearing this case under *Younger* as the matter falls within one of the permitted exceptions as developed by the Supreme Court. Described in *W.K. by W.K. v. N.J. Div. of Developmental Disabilities*, exceptions to *Younger* abstention apply in circumstances where : (1) the "state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman*, 420 U.S. at 611; (2) the "challenged provision is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 423, 60 L.Ed. 2d 994, 99 S. Ct. 2371 (1979); or (3) there is "an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 124-25, 44 L. Ed. 2d 15, 95 S. Ct. 1524 (1975). *W.K. by W.K.*, 974 F. Supp. 791, 796 (D.N.J. 1997). Any one of these exceptions, independently, are sufficient for a district court to evade abstention under *Younger*. *See Kugler v. Helfant*, 421 U.S. 117, 124, 95 S. Ct. 1524, 1530, 44 L. Ed. 2d 15 (1975) (explaining that the *Younger* Court 'left room for federal equitable intervention' when there is a showing of bad faith or harassment by state officials, when the state law is flagrantly violative of constitutional prohibitions, or where other 'extraordinary circumstances' exist and can be show.) Plaintiffs allege that the Governor's contested Orders flagrantly violated their constitutional rights under the First and Fourteenth Amendments, and that the state prosecutor's refusal to entertain plea negotiations constitutes bad faith. [Dkt. No. 67 at page 15]. Although Plaintiffs' allegations are troubling—particularly that Plaintiffs, unlike others, were "targeted" by the setting up of cameras and the alleged prosecutor's directive not to entertain any plea discussions typically

afforded to other defendants—the Court is nonetheless disinclined to involve itself in pending state court litigation. In this instance, it is clear that the ongoing state criminal prosecutions fall within the confines of *Younger* abstention and should be resolved in the jurisdiction in which they emanated—the state courts. The ongoing state proceedings (1) "are judicial in nature"; (2) "implicate important state interests"; and (3) "afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing, *e.g.*, *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Troubling as the alleged facts are, the Court finds that Plaintiffs are able to raise their claims of selective enforcement and bad faith as presented in the Amended Complaint in the state court proceeding. Moreover, in light of the recent Supreme Court rulings, Plaintiffs may raise the unconstitutionality of EO 107, the order they have already been charged with violating, in the state court proceeding as well. For these reasons, the Court will abstain under *Younger*.

## IV. Conclusion

For the reasons set forth above, the Court finds that Plaintiffs' claims are moot. Accordingly, Plaintiffs' Motion for Reconsideration is DENIED and Defendants' Motions to Dismiss are GRANTED. The Court will abstain from addressing Plaintiffs' pending state court proceedings.

Date: 8/16/2021   /s/ Renée Marie Bumb
　　　　　　　　　　　　　　　　　HON. RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE